## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a federally chartered banking corporation, & MTGLQ INVESTORS, L.P., | Civil Action No. 15-3787 (JMV) (MF) |
| *Plaintiffs,* | **OPINION** |
| v. | |
| NICHOLAS J. DUBOIS & MRS. NICHOLAS J. DUBOIS, his wife, | |
| *Defendants.* | |
| NICHOLAS J. DUBOIS, | |
| *Third-Party Plaintiff,* | |
| v. | |
| FEDERAL HOUSING FINANCE AGENCY, NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICES; XYZ Title Co. (fictitious); XYZ CORPS. 2-10 (fictitious); JOHN/JANE DOES 1-10 (fictitious), | |
| *Third-Party Defendants.* | |

**John Michael Vazquez, U.S.D.J.**

Currently pending are two motions to dismiss Defendant Nicholas DuBois' ("DuBois") Counterclaim and Third-Party Complaint. The first was filed by MTGLQ Investors, L.P. ("MTGLQ") and Shellpoint Mortgage Services. ("Shellpoint"), D.E. 85; and the second was brought by Federal National Mortgage Association ("Fannie Mae") and the Federal Housing

Finance Agency ("FHFA"), D.E. 87. Shortly before filing their Motion to Dismiss, Fannie Mae and the FHFA filed a motion for leave to file an overlength brief *nunc pro tunc*. D.E. 86. DuBois asked that the motions be denied and filed a cross-motion to, among other things, strike the Amended Complaint and enter judgment on the pleadings. D.E. 90. The Court reviewed the parties' submissions,[1] and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Fannie Mae and the FHFA's motion to file an overlength brief is **GRANTED**, both motions to dismiss are **GRANTED**, and DuBois' cross-motion is **DENIED**.

## I.    Background and Procedural History

The dispute stems from DuBois' execution of a note and mortgage in 2001 (the "Mortgage"), financed by non-party HomeSide Lending, Inc. HomeSide was then acquired by nonparty Washington Mutual Bank, N.A. ("WaMu") the following year.[2] TPC ¶ 11. In November of 2002, Fannie Mae filed a foreclosure action against DuBois in the Superior Court of New Jersey. Fannie Mae allegedly undertook this action while not yet being the assignee of the Mortgage. *Id.* ¶ 13. However, on January 30, 2003, WaMu assigned the Mortgage to Defendant Fannie Mae but continued to service the transaction. *Id.* ¶ 12.

---

[1] The following briefs, which will be referred to within by their docket entry numbers, were submitted in connection with this motion: DuBois' briefs (D.E. 90, 92, 99); Fannie Mae and FHFA's briefs (D.E. 86, 87, 91, 98); and MTGLQ & Shellpoint's briefs (D.E. 85, 97). Per the Court's instructions, DuBois also filed a six-page letter presenting the factual and legal basis as to why he should be granted leave to file a sur-reply, which the Court treats as a sur-reply. D.E. 99.

[2] The facts are taken from DuBois' First Amended Answer, Separate Defenses, Counterclaim, Third-Party Complaint, and Demand for Jury Trial ("TPC"), D.E. 16, and Answer to the First Amended Complaint, Separate Defenses, Counterclaim; First Amended and Supplemental Third-Party Complaint ("ATPC"), D.E. 75.

DuBois removed the foreclosure action to the District of New Jersey on February 12, 2003,[3] and asserted counterclaims against Fannie Mae and third-party claims against WaMu and Fannie Mae's former attorneys, Shapiro & Diaz, LLP ("S&D"). *Id.* ¶ 15. After the case was removed, Fannie Mae allegedly dismissed its claims against DuBois, leaving only DuBois' counterclaims and the thirty-party claims against WaMu and S&D. *Id.* ¶ 16.

In 2003, WaMu filed another foreclosure action in New Jersey state court. DuBois' counterclaims and third-party claims from the first foreclosure matter were still pending in this Court, the United States District Court for the District of New Jersey. *Id.* ¶ 17. The parties then reached a settlement agreement which was memorialized in an August 9, 2004 Final Settlement Order ("Settlement"). *Id.* ¶¶ 21-27, Exhibit B to TPC. DuBois alleges that he made the required payments under the Settlement but that the payments were not processed or deposited by non-party FMLLC[4] or WaMu—instead, they were "held to create a false appearance of default." *Id.* ¶¶ 28-29.

DuBois claims that Fannie Mae and WaMu failed to comply with the Settlement in a number of ways, including by not dismissing the state action with prejudice and by inappropriately applying one of DuBois' payments to back fees and penalties. *Id.* ¶¶ 30-33. DuBois alleges that Fannie Mae, through its counsel, told DuBois not to make his mortgage payments in October and November 2004. DuBois states that he did make the payments, but that instead of properly crediting him, WaMu "converted" the funds in violation of the Settlement. *Id.* ¶ 34-40. Later that

---

[3] The ATPC states that DuBois filed the notice of removal in 2002. However, since the ATPC also alleges that the action had not been filed until November of 2002, the Court assumes that DuBois means February 2003.

[4] DuBois made the alleged payments by transferring them into non-party FMLLC's trust account. FMLLC was allegedly WaMu's counsel at the time. TPC ¶ 28.

year, FMLLC proposed a loan modification agreement which allegedly displayed incorrect numbers as to the unpaid balance of the Mortgage and the escrow account. *Id.* ¶ 41. In February 2005, FMLLC "demanded" an almost 40% increase in DuBois' monthly escrow payment. FMLLC stated that WaMu and Fannie Mae would "delete all fees and so-called 'recoverable balance'" on the [M]ortgage, and clear DuBois' derogatory credit reports if DuBois executed the proposed loan modification. *Id.* ¶¶ 51-52. DuBois signed the modification agreement, effective March 21, 2005. *Id.* ¶ 53.

DuBois, however, alleges that WaMu and Fannie Mae violated the modification agreement in several ways. *Id.* ¶ 58. For example, WaMu never "zeroed out" DuBois' late fees, penalties, and recoverable balance. *Id.* In June 2005, WaMu and Fannie Mae applied all of DuBois' payments to "arrears." *Id.* ¶ 60. In July 2005, DuBois attempted to pay $1,836.92, but WaMu refused to accept it, claiming the correct amount was $2,455.72. *Id.* ¶ 61. On August 5, 2005, WaMu mailed DuBois a notice of default. *Id.* ¶ 65. Shortly after, WaMu sent DuBois a notice of intention to accelerate and foreclose on August 19, 2005. *Id.* ¶ 66.

In October of 2005, WaMu returned DuBois' payments for July, August, and September, and informed DuBois that he needed to replace the checks because WaMu could not "negotiate" checks made payable to FMLLC's trust account. *Id.* ¶ 71. DuBois alleges that WaMu's return of the checks was part of a fraud by WaMu and Fannie Mae, whose goal was to "double dip" by "capitalizing interest and disbursements without crediting" his payments, and to inflate alleged "arrears" on the account. *Id.* ¶¶ 72-73. DuBois refused to send new checks and sent the returned checks back to FMLLC. *Id.* ¶ 74. FMLLC attempted to mail the checks back to DuBois again, but DuBois' counsel at the time refused to accept them. *Id.* ¶ 77. By November 2005, DuBois alleges that his credit report displayed that he was two years behind in his mortgage payments,

despite making the correct payments under the Settlement and the 2005 modification agreement. *Id.* ¶ 82. As a result, DuBois stopped making mortgage payments. *Id.* ¶ 83.

In December 2005, DuBois was contacted by WaMu's new counsel, Norris, McLaughlin & Marcus, PA ("NMM"), in an attempt to settle the matter. In March 2006, NMM offered to waive certain late fees in exchange for a payment of $15,621.90. *Id.* ¶¶ 86, 90. DuBois refused, and attempted to pay his own "T&I" to the "municipal tax authority and insurance carrier," both of which were rejected. *Id.* ¶¶ 94-95. DuBois also informed NMM that he was lawfully excused from paying his mortgage because of WaMu and Fannie Mae's defaults. *Id.* ¶ 92.

On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") was appointed as the receiver for WaMu. The FDIC sold substantially all of WaMu's assets to JP Morgan Chase Bank, NA ("JPMCB"). *Id.* ¶ 99. On September 26, 2008, JPMCB began to service DuBois' account, still under the name WaMu. *Id.* ¶ 100. On April 9, 2009, DuBois filed a proof of claim, pursuant to 12 U.S.C. § 1821(d), against the receivership. *Id.* ¶ 101-102. The FDIC denied DuBois' claim on September 18, 2009. *Id.* ¶ 103.

DuBois then filed a lawsuit in the United States District Court for the District of Columbia on November 19, 2009, naming WaMu; JPMCB; Chase Home Finance, LLC; Fannie Mae; the FDIC; the FHFA; FMLLC; and Tait O. Norton as defendants. DuBois also asserted twenty-two claims for relief (the "D.C. Litigation"). Compl., D.E. 1, *DuBois v. Wash. Mut. Bank*, No. 09-2176 (D.D.C. Nov. 17, 2009). DuBois voluntarily dismissed the FHFA from the D.C. action "pursuant to a tolling agreement." ATPC ¶ 30. The remaining defendants filed motions to dismiss, and the District Court dismissed the complaint in its entirety. TPC ¶ 105, *see also DuBois v. Wash. Mut. Bank*, No. 09-2176, 2010 WL 3463368, at *7 (D.D.C. Sept. 3, 2010). The court determined that DuBois' common law, New Jersey Consumer Fraud Act ("NJCFA"), Real Estate Settlement

Procedures Act ("RESPA"), and Fair Credit Reporting Act ("FCRA") claims were time-barred; his New Jersey Fair Credit Reporting Act ("NJFCRA") claim was preempted; he had no cognizable claim under the Fair Debt Collection Practices Act ("FDCPA"); and that DuBois failed to state a claim for his Federal Deposit Insurance ("FDI") Act claim. *See* Sept. 2, 2010 Opinion, D.E. 87-3. DuBois appealed, and the United States Court of Appeals for the District of Columbia Circuit affirmed the district court's dismissal. TPC at ¶ 105; *see also DuBois v. Wash. Mut. Bank*, 492 F. App'x 117 (D.C. Cir. 2012).

In August 2013, Fannie Mae assigned the note and mortgage to JPMCB. ATPC ¶¶ 35-36. JPMBC executed a complaint for foreclosure against DuBois on February 6, 2014. *Id.* ¶ 37. DuBois asserts that he was not served with the complaint and was not aware of the foreclosure action. As a result, DuBois argues, default and a default judgment were wrongly entered against him. *Id.* ¶ 37. In December 2014, Fannie Mae "re-acquired" the note and mortgage. *Id.* at ¶ 38. DuBois alleges that these transfers were contemplated by Fannie Mae in advance, to avoid statute of limitations and claim preclusion arguments. *Id.* ¶ 35.

On April 14, 2016, the FHFA announced its principal reduction modification program (the "Program"), which was a one-time offering for borrowers that met specific eligibility criteria and whose loans were owned by the FHFA. *Id.* ¶ 40. DuBois claims his mortgage qualified for the Program, but the FHFA and Fannie Mae did not inform him that he was eligible, nor did MTGLQ or Shellpoint. *Id.* ¶¶ 41-43. Instead, on February 10, 2016, Fannie Mae sold DuBois' mortgage to MTGLQ, along with $418 million worth of "nonperforming loans." *Id.* ¶ 45. Then, on February 19, 2016, Fannie Mae offered a modification and settlement to DuBois via email. DuBois did not receive notice of this proposed settlement until March 4, 2016. *Id.* ¶ 44. DuBois alleges that the

timing of the settlement offer was purposeful and done to preclude DuBois from participating in the Program. *Id.* ¶ 47.

The current action was filed by JPMCB on February 26, 2014 in Sussex County, New Jersey, JPMCB assigned the mortgage to Fannie Mae on December 19, 2014, and DuBois removed the matter on June 3, 2015. D.E. 1. On June 10, 2015, DuBois filed a motion to dismiss the complaint, D.E. 2, and Fannie Mae then filed a motion to remand, D.E. 3. Both motions were denied. D.E. 10. DuBois filed the TPC on August 24, 2015. D.E. 16. On December 21, 2015, DuBois filed a cross-motion to dismiss and/or condition Defendants' answer upon compliance with the parties' 2004 stipulated settlement.[5] D.E. 29.

After the matter was reassigned to the undersigned and Honorable Mark Falk, U.S.M.J., D.E. 37, MTGLQ filed a motion to intervene, D.E. 48, which was granted. D.E. 71. MTGLQ filed an amended complaint against DuBois on March 16, 2017. D.E. 72. DuBois filed the ATPC on April 20, 2017, which incorporated the allegations made in the TPC and brought claims against intervenor MTGLQ. D.E. 75. In the TPC, DuBois asserts eighteen counts against Fannie Mae for (1) equitable fraud; (2) negligent misrepresentation; (3) legal fraud; (4) fraud in the inducement; (5) conversion; (6) tortious interference with prospective economic advantage; (7) intentional infliction of emotional distress; (8) consumer fraud pursuant to the NJCFA; (9) negligence; (10) breach of contract; (11) breach of implied covenant of good faith and fair dealing; (12) constructive fraud; (13) unjust enrichment; (14) promissory estoppel; (15) violation of the FCRA; (17)[6]

---

[5] The cross-motion was filed in response to Fannie Mae's motion to vacate default as to the counterclaims. Default was entered as to Fannie Mae on October 6, 2015, but the Clerk's entry of default was subsequently vacated. D.E. 33.

[6] The TPC does not contain a count sixteen. For the sake of clarity, the Court refers to the counts as pled in the TPC and ATPC throughout this Opinion and in the accompanying Order.

violation of the NJFCRA; (18) violation of the FDCPA; and (19) for declaratory relief. TPC ¶¶ 113-207. Counts One through Six, Counts Eight through Seventeen, and Count Nineteen are virtually identical to those brought against Fannie Mae in the D.C. Litigation. Only the intentional infliction of emotional distress claim (Count Seven) and FDCPA claim as to Fannie Mae (Count Eighteen) are new to this action.

The ATPC asserts the following twelve additional claims, picking up where DuBois left off in the TPC[7]: (20) against the FHFA, Fannie Mae, and MTGLQ as jointly and severally liable for Counts One through Nineteen in the TPC; (21) violation of the NJFCRA against the FHFA, Fannie Mae, and MTGLQ; (22) fraudulent transfer against the FHFA, Fannie Mae, and MTGLQ; (23) declaratory relief against MTGLQ and Shellpoint; (24) negligent supervision against the FHFA; (25) tortious interference with prospective economic advantage against the FHFA, Fannie Mae, and MTGLQ; (26) tortious interference with contract against MTGLQ and Shellpoint; (27) civil conspiracy against the FHFA, Fannie Mae, MTGLQ and Shellpoint; (28) aiding and abetting fraud against the FHFA, Fannie Mae, MTGLQ and Shellpoint; (29) deceit against the FHFA, Fannie Mae, MTGLQ, and Shellpoint; (30) prima facie tort against the FHFA, Fannie Mae, MTGLQ and Shellpoint; and (31) violation of the FDCPA against Shellpoint.

On May 12, 2017, Judge Falk held telephone conference with the parties after DuBois requested that default be entered against Fannie Mae and the FHFA; Fannie Mae and the FHFA requested an extension of time to answer the counterclaims. Judge Falk entered an Order (the "May 12 Order") memorializing the results of the telephone conference. Among other things, the

---

[7] The ATPC labels the new counts as prayers for relief, but fails to expressly differentiate between counterclaims (against Plaintiffs) and third-party claims (against Third-Party Defendants). Because the Court's analysis is the same whether a particular count is labeled a counterclaim or a third-party count, the Court refers to all DuBois' claims as counts or counterclaims.

May 12 Order states that the ATPC "shall be the operative pleading, all previous pleadings have been superceded." D.E. 83.

After the May 12 phone conference, Shellpoint, MTGLQ, Fannie Mae and the FHFA filed motions to dismiss the TPC and ATPC, pursuant to Rule 12(b)(6). D.E. 85, 87. The FHFA and Fannie Mae also filed a motion for leave to file a brief in excess of the Local Rule 7.2(b) page limit *nunc pro tunc*, D.E. 86, and filed a brief in support of their motion that was eleven pages over the page-limit. DuBois opposed all the motions, including the FHFA and Fannie Mae's motion for leave to file an overlength brief.[8] D.E. 90, 92. DuBois also filed a cross-motion that seeks to, among other things, strike the First Amended Complaint and for Judgment on the Pleadings. D.E. 92.

## II.     MOTION TO DISMISS STANDARD OF REVIEW

This motion pertains to the dismissal of counterclaims[9] pursuant to Federal Rule of Civil Procedure 12(b)(6), which is evaluated in the same manner as a motion to dismiss a claim in a complaint. *Signature Bank v. Check-X-Change, LLC*, No. 12-2802, 2013 WL 3286154, at *2 (D.N.J. June 27, 2013). For a counterclaim to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556

---

[8] Fannie Mae and the FHFA should have obtained permission to file an overlength brief in advance of their filing, rather than request permission after the fact. D.E. 86. Although the Court could impose sanctions for violating L. Civ. R. 7.2(b) (*see, e.g.*, *In re Nice Sys., Ltd. Secs. Litig.*, 135 F. Supp. 2d 551, 558 n.6 (D.N.J. 2001) (denying motion to dismiss without prejudice for failure to comply with L. Civ. R. 7.2(b))), the Court will not do so given the fact that DuBois asserted thirty-one claims in the TPC and ATPC. Accordingly, Fannie Mae and the FHFA's motion for leave to file an overlength brief *nunc pro tunc* is granted. Going forward, however, Fannie Mae, the FHFA, and their counsel should ensure that they are familiar, and comply with, the District's Local Rules.

[9] As set forth in note 7, *supra*, the ATPC does not differentiate between counterclaims and third-party claims. The Court applies the same standard of review to both, so the Court refers to all of DuBois' claims as counts or counterclaims.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a counterclaim, district courts must separate the factual and legal elements. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a claim will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

When evaluating a motion to dismiss, courts "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). "While a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Id.*

## III.    LEGAL ANALYSIS

### 1.    The "Operative" Pleading and "Successive" Motions to Dismiss

As an initial matter, DuBois argues that the May 12 Order, which states that the ATPC "shall be the operative pleading, all previous pleadings having been superseded," in effect served

to dismiss the Amended Complaint, D.E. 72, and transform DuBois into the plaintiff in this matter. DuBois asserts that as a result, the Amended Complaint should be stricken, and the parties and caption should be rearranged accordingly. D.E. 92. This is patently wrong -- the May 12 Order was referring to DuBois' operative pleading, not every pleading in the case.[10] As a magistrate judge, Judge Falk does not have the ability to *sua sponte*, or even through a motion, dismiss a pleading. *See* 28 U.S.C. § 636(a) (outlining duties and limitations of a magistrate, including that a magistrate judge cannot decide a motion to dismiss or involuntarily dismiss an action). Moreover, the transcript for the May 12, 2017 telephone call, which led to the May 12 Order, clearly confirms that DuBois' interpretation of the Order was not what Judge Falk intended. For the entire duration of the telephone call, the parties discussed when the Counterclaim/Third-Party Defendants were required to respond to DuBois' counterclaim and third-party claims, and to which documents they should respond. There was simply no discussion of, or even an allusion to, dismissing Plaintiffs' Amended Complaint. Transcript of May 12, 2017 Telephone Conference, T19:21-23; 20:7-20, D.E. 100. As a result, the Amended Complaint remains and the Court will not recaption this matter or reposition the parties. DuBois' cross-motion is denied.[11]

---

[10] To be clear, a "pleading" is not limited to a complaint. Rule 7(a) sets forth a list of documents that are considered pleadings, which includes complaints, answers, counterclaims, and third-party complaints. Fed. R. Civ. P. 7(a). As a result, there may be multiple "operative pleadings" in a single matter.

[11] Because the Amended Complaint is not stricken, the Court need not address DuBois' argument that if Plaintiffs were required to refile their complaint it would be time-barred. D.E. 92 at 16-17. The Court also notes that DuBois filed a motion to dismiss Fannie Mae's original complaint on statute of limitations grounds (D.E. 2), and that this motion was denied (D.E. 10, 23).

Relatedly, DuBois maintains that Fannie Mae's current motion to dismiss is improper because it is a post-answer, successive Rule 12 motion.[12] DuBois contends that the ATPC supplements the TPC. Consequently, DuBois argues that in light of Fannie Mae's answer, Fannie Mae is now procedurally barred from seeking to dismiss claims in the TPC. As a result, DuBois alleges that Fannie Mae and the FHFA's motion should be denied and that the Court should bind Fannie Mae to its original answer. D.E. 90 at 9-11. An amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996)). In this instance, by titling the ATPC the "Supplemental" third-party complaint, and starting the asserted counts where the TPC left off, DuBois sufficiently referenced to the TPC. Therefore, the TPC is incorporated into the ATPC. Nevertheless, nothing in the Federal Rules of Civil Procedure indicates that Fannie Mae was foreclosed from responding to the new pleading, including claims incorporated from TPC, or that

---

[12] DuBois also takes issue with the fact that the Counterclaim/Third-Party Defendants filed their motions to dismiss without seeking leave from the Court, in violation of the operative Scheduling Order (D.E. 45), and argues that the Court should therefore not entertain their motions. D.E. 90 at 12-13. Although the Counterclaim/Third-Party Defendants did not adhere to the scheduling order, the Court will still consider the pending motions given the fact that the parties addressed their responses to DuBois' pleading during the May 12 telephone conference (D.E. 100), that the May 12 Order states that "FNMA and FHFA may answer, *move or otherwise respond* to the Counterclaim and the First Amended and Supplemental Third-Party Complaint" (D.E. 83), and because deciding an issue on the merits is a better use of judicial resources than dismissing for failure to adhere to the scheduling order (*see, e.g., Ciemniecki v. Parker McCay P.A.*, No. 09-6450, 2010 WL 4746214, at *1 n.1 (D.N.J. Nov. 15, 2015) (deciding a procedurally improper motion on the merits because "it is most efficient for the Court to decide the pending motion on the merits rather than deny it on procedural grounds and require the [party] to re-file the same motion")).

it was bound by its response to DuBois' original pleading.[13]  Fed. R. Civ. P. 12; 15(a)(3); *see also*

*Van Veen v. AT & T Corp.*, No. 10-1635, 2011 WL 4001004, at *3 (E.D. Pa. May 25, 2011)

(concluding that defendant did not waive its right to file a Rule 12(b)(6) motion to dismiss an

amended complaint because it answered a substantively identical original complaint).

DuBois provides no binding authority to the contrary.  While DuBois cites to *DiLoreto v.*

*Borough of Oaklyn*, 744 F. Supp. 610 (D.N.J. 1990) to support his argument, the matter is

distinguishable.  In *DiLoreto*, the plaintiff failed to include a qualified immunity defense in her

answer, then raised it for the first time in her motion for summary judgment, which was filed after

the joint final pretrial order was entered.  Based largely on the procedural posture of the case, the

*DiLoreto* court determined that it was "simply too late in this litigation to raise the issue" and that

the plaintiff had waived her right to assert the defense.  *Id.* at 617-18.  This current case is

materially different; the Court is addressing Rule 12 motions and it is much earlier in the litigation.

In addition, while in most cases successive Rule 12 motions are not permitted, Fed. R. Civ.

P. 12(g)(2), the Court is not presented with a successive Rule 12 motion because Fannie Mae did

not file a prior motion and the FHFA withdrew its earlier motion before a decision on the merits,

D.E. 74.  As a result, these motions are the first Rule 12 motions addressing the counterclaims and

third-party claims to be considered in this matter.  In addition, the movants have not waived their

right to file their motions.[14]  Fed. R. Civ. P. 12(h); *see also United States ex rel. Kolchinsky v.*

---

[13] DuBois also maintains that the Amended Complaint must be dismissed for lack of a predicate default because Fannie Mae admitted that DuBois did not default in August 2005 in its answer. D.E. 92 at 13.  Because the Court concludes that Fannie Mae is permitted to respond to DuBois' amended pleading, and Fannie Mae is not bound by its previously filed answer, the Court will not dismiss the Amended Complaint for lack of a predicate default at this time.

[14] The Court notes that in its Answer, Fannie Mae pled that DuBois failed to state a cause of action upon which relief may be granted. D.E. 36.  Consequently, Fannie Mae did assert failure to state a claim in a timely fashion.

*Moody's Corp.*, 238 F. Supp. 3d 550, 555 (S.D.N.Y. 2017) (permitting defendant's Rule 12(b)(6) motion to dismiss second amended complaint even though it had already filed a Rule 12(b)(6) motion to dismiss prior complaints); *SEC v. Lucent*, No. 04-2315, 2006 WL 2168789, at *5 (D.N.J. June 20, 2006) (explaining that failure join to Rule 12(b)(6) argument with other 12(b) motions does not constitute a waiver as a party may still "file the functional equivalent of a 12(b)(6) motion at a different time or in a different manner in the proceedings") (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice And Procedure* § 1392 (3d ed. 2004)). Consequently, Fannie Mae and the FHFA's motion to dismiss for failure to state a claim is not procedurally improper, and the Court will not limit their motions to dismiss in any manner.[15]

Finally, DuBois argues that Fannie Mae and the FHFA should be judicially estopped from filing a Rule 12 motion because they are taking an inconsistent position in this motion to dismiss than Fannie Mae took in its answer. D.E. 90 at 17-18. Judicial estoppel is a tool that courts may use as an equitable means to "sanction malfeasance." *Montrose Med. Grp. Participating Savings Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001). A district court may only apply judicial estoppel if the party to be estopped (1) took two positions that "are irreconcilably inconsistent;" (2) changed its position "in bad faith—*i.e.*, with intent to play fast and loose with the court;" and (3) the estoppel must be "tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Id.* at 779-80 (quoting *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 109 (3d Cir. 1999)). Judicial estoppel, however, "may

---

[15] The Court could also consider the present arguments by converting the motion to a Rule 12(c) motion for judgment on the pleadings. *See, e.g. Newtown v. Greenwich Township*, No. 12-238, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) (exercising the court's discretion to construe post-answer Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings). Moreover, this would have little substantive impact because the Court would "appl[y] the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6) motion." *Id.*

not be employed unless a litigant's culpable conduct has assaulted the dignity or authority of the court." *Id.* at 781. DuBois fails to provide the Court with any facts suggesting bad faith by Fannie Mae or the FHFA's litigation strategy here. Accordingly, Fannie Mae and the FHFA are not judicially estopped from filing their motion to dismiss.

### 2. *Res Judicata* and Collateral Estoppel

All Counterclaim/Third-Party Defendants argue that because of the D.C. Litigation, DuBois' current claims are barred by *res judicata* and collateral estoppel. *Res judicata* and collateral estoppel are affirmative defenses but may be appropriate grounds on which to dismiss a complaint under Rule 12(b)(6). *Walzer v. Muriel, Siebert & Co., Inc.*, 221 F. App'x 153, 155 (3d Cir. 2007). DuBois, however, contends that Fannie Mae waived its right to assert *res judicata* or collateral estoppel now because it did not raise collateral estoppel as a defense in its answer. D.E. 92 at 26. As discussed, because DuBois filed an amended pleading, Fannie Mae is not bound by its original answer and may respond to the TPC and ATPC. Further, a party's failure to raise *res judicata* or collateral estoppel at the earlier opportunity does not necessarily foreclose that party from raising it later in the litigation. *See, e.g., Courteau v. United States*, No. 02-659, 2007 WL 1456198, at *2 (D.N.J. May 14, 2007) (permitting defendant to assert defense of *res judicata* for the first time in motion for summary judgment where plaintiff was not prejudiced). Here, DuBois does not sufficiently articulate what unfair prejudice, if any, he suffered by Fannie Mae's failure to assert *res judicata* or collateral estoppel in its answer. New parties have been added to the litigation and have not yet filed answers, and DuBois has filed an amended pleading. Moreover, this case is still in the early stages of the litigation; the Court is addressing motions to dismiss and

the parties have not engaged substantial discovery. Given these facts, the Court will address the merits of Defendants' *res judicata* and collateral estoppel arguments.[16]

When deciding a motion based on preclusion, the Court applies the preclusion law from the first forum, here the United States District Court of the District of Columbia. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 221 (3d Cir. 2016). Because the first forum was another federal court, the Court applies federal common law. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001).

### a. *Res Judicata*

"*Res judicata*, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Attorney Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citation omitted). "A party seeking to invoke *res judicata* must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Id.* (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). *Res judicata* also bars claims that could have been brought in the first action. *Id.*

*Res judicata* bars the majority of DuBois' claims as to Fannie Mae, MTGLQ and Shellpoint. The D.C. Litigation complaint was dismissed with prejudice in its entirety: the court determined that the state common law,[17] NJCFA, RESPA, and FCRA claims were time-barred;

---

[16] DuBois also argues that MTGLQ and Shellpoint waived this defense because as parties in privity with Fannie Mae, they inherit Fannie's Mae's admissions and failure to previously waive the defense. Because the Court concludes that Fannie Mae can assert these defenses in the pending motion to dismiss it need not address DuBois' argument regarding privity.

[17] In his sur-reply, DuBois discusses *GMAC Mortg., LLC v. Willoughby*, 230 N.J. 172 (2017), a recent case from the New Jersey Supreme Court that addressed a motion to enforce a settlement agreement that was entered into through New Jersey's Foreclosure Mediation Program. The court recognized that "[a]t its core, we are dealing with a contractual dispute." *Id.* at 183. As a result,

the NJFCRA claim was preempted; there was no cognizable claim under the FDCPA; and DuBois failed to state a claim for his FDI Act claim. *See DuBois*, 2010 WL 3463368, at *3-7. On appeal, the Unites States Court of Appeals for the District of Columbia Circuit affirmed the final judgment. *DuBois*, 492 F. App'x 117-18. Accordingly, there was a final judgment on the merits in the D.C. Litigation. *See McHale v. Kelly*, 527 F. App'x 149, 152 (3d Cir. 2013) (stating that federal dismissal on statute of limitations grounds is a final decision on the merits); *Comprelli v. Town of Harrison*, 465 F. App'x 146, 148 n.6 (3d Cir. 2012) ("It is well established that a 'judgment entered "with prejudice" is the equivalent of a judgment entered on the merits and it considered a final judgment.'" (quoting *Citizens Voices Ass'n v. Collings Lake Civil Ass'n*, 396 N.J. Super. 432, 444 (2007)).

In addition, the D.C. Litigation involved the same parties or their privities. Fannie Mae was a named party. Therefore, there is no question that the claims DuBois asserts against Fannie Mae now may be subject to *res judicata*. As for MTGLQ and Shellpoint, DuBois argues that neither entity is in privity with Fannie Mae because they never owned or controlled Fannie Mae, and did not control the D.C. Litigation. D.E. 92 at 27-28. "The term 'privity' is used merely as 'a way to express the conclusion that nonparty preclusion is appropriate on any ground.'" *Salerno v. Corzine*, 449 F. App'x 118, 122-23 (3d Cir. 2011) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 894

---

although DuBois did not raise a motion to enforce the settlement agreement here or in the D.C. Litigation, this claim is encompassed in his breach of contract claims. The breach of contract claim, however, was dismissed by the district court in the D.C. Litigation on statute of limitations grounds, and the dismissal was affirmed with by the circuit court. As a result, DuBois cannot re-litigate this issue. Moreover, although *Willoughby* has similar allegations as to unilateral changes to a mortgage settlement agreement, it does not change the law regarding the enforcement of settlement agreements such that the application of *res judicata* or collateral estoppel would be inappropriate. *See, e.g.*, *Gambrell v. Hess*, 777 F. Supp. 375, 380 (D.N.J. 1991) ("While it is true that *res judicata* may not apply to a subsequent action in instances in which there has been an intervening change in the law or significant facts, that is not the case here.") (internal citations omitted).

n.8 (2008)).  The Third Circuit has observed that "nonparty claim preclusion applies if the nonparty had a substantive legal relationship with a party, and a successor in interest has such a relationship with its predecessor." *In re Montgomery Ward, LLC*, 634 F.3d 732, 737 (3d Cir. 2011) (quoting *Taylor*, 553 U.S. at 892); *see also Shah v. United States*, 540 F. App'x 91, 93 (3d. Cir. 2013) (finding that "preceding and succeeding owners of the property at issue" were in privity for *res judicata* purposes); *In re Faulkner*, --- B.R. ---, 2018 WL 4810673, at *10 (Bank. E.D. Pa. 2018) (concluding that non-party was in privity with a party in a prior proceeding when the non-party succeeded the party's interest in property).  As the successor-in-interest to the Mortgage and its agent, MTGLQ and Shellpoint are in privity with Fannie Mae.[18]

Finally, the claims asserted in the TPC are virtually identical to the claims that DuBois asserted in the D.C. Litigation and the claims in both matters rely on the same or related facts. *Compare* TPC *with* Compl., D.E. 1, *DuBois v. Wash. Mut. Bank*, No. 09-2176 (D.D.C. Nov. 17, 2009).  In determining whether a subsequent suit is based on the same causes of action as the first, federal courts look to whether the claims arise out of the same transaction or occurrence.  "[T]he focus is on 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.'"  *Shah*, 540 F. App'x at 94.  "A mere difference in the theory of recovery is not dispositive."  *Lurizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991).  As discussed, the majority of claims in the TPC are duplicates of the claims asserted in the D.C. Litigation, with the exception of the intention infliction of emotional distress and FDCPA claim.

---

[18] DuBois correctly argues that *res judicata* does not apply to FHFA as it was not party to the D.C. Litigation at the time of the final judgment.  D.E. 92 at 22.  FHFA, however, does not argue that the complaint should be dismissed on *res judicata* grounds.  D.E. 87 at 3-5.

The TPC claims rely largely on the same facts, and would require the same witnesses and documentation, as the D.C. Litigation.

Although DuBois did not assert his IIED or FDCPA claim against Fannie Mae in the previous litigation, there was nothing preventing him from doing so at the time. The two claims are based on the same transactions alleged in the D.C. Litigation and could have been raised in that case. As a result, every claim asserted in the TPC is now barred as to Fannie Mae, MTGLQ, and Shellpoint because of *res judicata*.[19]

As for claims asserted in the ATPC, DuBois asserts new facts regarding the Principal Reduction Program. ATPC ¶¶ 35-51. Because these alleged events occurred after the D.C. Litigation, they could not have been litigated in that matter. As a result, the claims asserted in the ATPC are not barred by *res judicata*.

DuBois argues that if the Court determines that *res judicata* applies, it must also conclude that Plaintiffs' foreclosure claims are barred because they were mandatory counterclaims in the D.C. Litigation and Fannie Mae failed to raise them in that matter. D.E. 92 at 23. The Court disagrees because Fannie Mae never had an opportunity to assert its mortgage claims in the D.C. Litigation. DuBois' claims were dismissed before Fannie Mae was required to file an answer or assert counterclaims. *See TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517 (E.D. Pa. 2010) (stating that because a related state court case was dismissed before party was required to file a pleading, that party was not precluded from filing alleged compulsory

---

[19] Although this does not appear to be the case, to the extent that DuBois' IIED or FDCPA claim as to Fannie Mae are premised on events or transactions that were not alleged in the D.C. Litigation, they would not be barred by *res judicata*. But as discussed below, both claims will be dismissed for failure to state a claim.

counterclaims in federal court). Therefore, Fannie Mae and its privities are not precluded from filing their mortgage claims in this matter.

### b. Collateral Estoppel

DuBois is also estopped from bringing Counts One through Six, Eight through Seventeen, and Nineteen. Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has already been decided. *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). Issue preclusion applies when the following requirements are satisfied: "(1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding." *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir. 2002). As discussed, DuBois largely uses the TPC to relitigate issues that were decided in the D.C. Litigation. Moreover, there was a final judgment on the merits in the D.C. Litigation, and the relevant issues were essential to the judgment. *See Pasckowski v. Roxbury Twp. Police Dep't*, No. A-1168-14T1, 2016 WL 2996159, at *5 (N.J. App. Div. May 25, 2016) (issue decided through a motion to dismiss was fully litigated on the merits); *see also Arena v. McShane*, 150 F. App'x 165, 167 (3d Cir. 2005) (finding that collateral estoppel barred claims that were litigated at motion to dismiss stage); *Blackburn v. Aventis Pharms., Inc.*, No. 06-4951, 2006 WL 3544980, at *3 (D.N.J. Dec. 8, 2006) (concluding that dismissal of claims on statute of limitations grounds constituted a final decision on the merits for collateral estoppel purposes).

In addition, unlike *res judicata*, collateral estoppel does not require mutuality. This means that collateral estoppel may bar a party from litigating claims from a prior matter even when the

party arguing that collateral estoppel should apply was not a party or in privity with a party in the prior litigation. *Peloro*, 488 F.3d at 175 ("Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary."). Consequently, DuBois cannot relitigate the claims he asserted in the D.C. Litigation, to the extent that they are based alleged wrongdoing as to the 2004 settlement. Yet, as noted as to *res judicata*, the ATPC involves new facts regarding the Principal Reduction Program. ATPC ¶¶ 35-51. Because these events were not litigated in the D.C. Litigation, much less necessary to the final judgment, DuBois is not collaterally estopped from asserting them now.

DuBois argues that collateral estoppel is inapplicable because the applicability of New Jersey's statute of limitations was not litigated in the D.C. Litigation. D.E. 92 at 26. The Court disagrees. In the district court opinion, the court conducted a choice of law analysis to determine that "D.C. law provides the limitations period for plaintiff's state law claims." *DuBois*, 2010 WL 3463368, at *4. On appeal, the circuit court stated the following: "DuBois argues in effect that it was improper for the District Court to apply District of Columbia choice-of-law rules, and instead the choice-of-law rules of the State of New Jersey, with a six-year statute of limitations, should have been applied. *We disagree*." *DuBois*, 492 F. App'x at 117 (emphasis added). Clearly, the issue of which statute of limitations applies was litigated in the D.C. Litigation and DuBois is estopped from raising it again in this matter.[20]

---

[20] DuBois raises a number of arguments as to why his claims are not time-barred, including that the doctrine of laches should be used instead of the statute of limitations (D.E. 92 at 18-19), that Fannie Mae's affirmative misconduct "lulled" DuBois into inaction and his claims relate back (*id.* at 20-21), that Fannie Mae's continuing violations toll or renew the statute of limitations (*id.* at 21-22), and that the statute of limitations were tolled pursuant to the parties tolling agreement (*id.* at 24-25). The Court, however, is not dismissing any of DuBois' claims on statute of limitations grounds. And while many of DuBois' claims were dismissed in the D.C. Litigation because they

In sum, DuBois is barred by the doctrine of *res judicata* from asserting any of the claims in the TPC with respect to Fannie Mae, MTGLQ and Shellpoint. Accordingly, these claims are dismissed with prejudice. In addition, DuBois is collaterally estopped from asserting the claims in the TPC with respect to any party with the exception of Counts Seven and Seventeen. Consequently, Counts One through Six, Eight through Sixteen, and Eighteen are dismissed with prejudice as to the FHFA.

### 3. Intentional Infliction of Emotional Distress Claim

In Count Seven, DuBois asserts a claim for intentional infliction of emotional distress ("IIED"), alleging that Fannie Mae's actions caused him emotional distress. To plead a *prima facie* claim for IIED under New Jersey law, a plaintiff must establish that Defendants intended to cause emotional distress; that the conduct was extreme and outrageous; that the actions proximately caused emotional distress; and that the emotional distress was severe. *Cole v. Laughrey Funeral Home*, 376 N.J. Super. 135, 146-47 (App. Div. 2005). Here, DuBois alleges that the wrongful conduct at issue was Fannie Mae's service of an allegedly fraudulent post-removal Notice of Motion. TPC ¶ 146. These allegations fall far short of the "extreme and outrageous" conduct that is necessary to plead an IIED claim. *See Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (stating that to establish "extreme and outrageous conduct," a plaintiff must allege facts demonstrating that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (quoting *Buckley*

---

were time-barred, DuBois is precluded from relitigating this issue. *See, e.g., Lewis v. O'Donnell*, 674 F. App'x 234, 237 (3d Cir. 2017) (affirming district court's dismissal of claims where "it [was] clear that [*res judicata*] requirements have been met and that Lewis is merely attempting to re-litigated issues that were already decided in state court"). In other words, issue preclusion is the barrier that DuBois cannot surmount.

*v. Trenton Saving Fund Soc.*, 111 N.J 355, 366 (1988))). DuBois has failed to cite any legal authority that permitted an intentional infliction of emotional distress claim to go forward pursuant to his alleged factual theory nor could the Court locate any such authority. Therefore, although Count Seven is dismissed as to Fannie Mae because of *res judicata*, it is also dismissed for failure to state a claim.

### 4. Federal Debt Collection Practices Act Claims

Counts Nineteen and Thirty-One allege that Fannie Mae and Shellpoint, respectively, are debt collectors as defined by the FDCPA, and that their conduct at issue violated the FDCPA. TPC ¶¶ 201-204; ATPC ¶ 129-39. The FDCPA "creates a private right of action against debt collectors who fail to comply with its provisions." *Grubb v. Green Tree Servicing, LLC*, No 13-07421, 2014 WL 3696126, at *4 (D.N.J. July 24, 2014). To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted *to be owed or due another*." 15 U.S.C. § 1692a(6) (emphasis added). "Creditors – as opposed to 'debt collectors' – generally are not subject to the FDCPA." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000).

Outside of conclusory allegations (TPC ¶ 202), DuBois fails to provide any plausible facts to establish that Fannie Mae is a debt collector rather than a creditor.[21] In fact, DuBois specifically pleads that Fannie Mae purchased the mortgage at issue. TPC ¶ 12. As a result, Counts Eighteen[22] and Thirty-One are dismissed for failure to state a claim. Although DuBois alleges that Shellpoint sent him a validation notice that violates § 1692g, he fails to plead sufficient facts demonstrating how the notice violated § 1692g, which notice he is actually referring to, the contents of the notice, or any other specific facts by which the Court could conclude that DuBois pleads a *prima facie* FDCPA claim as to Shellpoint.

### 5. Joint and Several Liability

In Count Twenty, DuBois alleges that as the successor-in-interest to Fannie Mae and the FHFA, MTGLQ is jointly and severally liable. ATPC ¶ 54. Joint and several liability is a damages provision, not an independent cause of action. *Township of Winslow v. Nextel Commc'ns of Mid-Atl., Inc.*, No. 17-2618, 2017 WL 6493143, at *5 (D.N.J. Dec. 18, 2017). Accordingly, Count Twenty is dismissed.

### 6. New Jersey Consumer Fraud Act Claim

In Count Twenty-One, DuBois alleges that Fannie Mae, the FHFA, and MTGLQ violated the NJCFA because they actively precluded DuBois from the Principal Reduction Program. ATPC ¶¶ 55-63. A plaintiff must establish three elements for an NJCFA claim: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal connection between the defendant's unlawful conduct and

---

[21] DuBois alleges that "the putative 2016 post-default assignment to MTGLQ thus makes MTGLQ a 'debt collector'" under the FDCPA. D.E. 92 at 36. DuBois, however, does not assert an FDCPA claim against MTGLQ.

[22] To be clear, Count Eighteen is also dismissed as to Fannie Mae pursuant to the doctrine of *res judicata.*

the plaintiff's ascertainable loss. *In re AZEK Building Prods., Inc. Mktg. & Sales Practice Litig.*, 82 F. Supp. 3d 608, 623 (D.N.J. 2015). DuBois' NJCFA claim is implausible. DuBois' NJCFA claim is predicated on the allegation that Fannie Mae sold his mortgage to MTGLQ to preclude him from participating in the Principal Reduction Program. ATPC ¶ 57. DuBois, however, acknowledges that his mortgage was included in the sale of a $418 million portfolio of non-performing loans. ATPC ¶ 45. The idea that Fannie Mae and MTGLQ engaged in a massive transaction in order to foreclose DuBois's ability to participate in the Principal Reduction Program is simply not plausible. Count Twenty, therefore, is dismissed for failure to state a claim.

### 7. Fraudulent Transfer Claim

Count Twenty-Two alleges that Fannie Mae, the FHFA, and MTGLQ violated the Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2-20 *et al.* "The purpose of the NJ UFTA is to prevent a *debtor* from placing his or her property beyond a creditor's reach." *In re Tzanides*, 574 B.R. 489, 512-13 (Bank. N.J. 2017). As such, remedies under the NJ UTFA "are only available to *creditors* who have a valid 'right to payment . . . .'" *TJI Gas Enters., LLC v. Lacey Gas, LLC*, No. A-3170-13T1, 2016 WL 6776119, at *4 (N.J. App. Div. Nov. 16, 2016) (quoting N.J.S.A. 25:2-21) (emphasis in original). Here, DuBois fails to plausibly plead that he is a creditor. DuBois alleges that he "had threatened [Fannie Mae] with suit, and suit was pending against [Fannie Mae], before the transfer was made." ATPC ¶ 65. But a pending lawsuit does not equate to a valid right to payment. *See* N.J.S.A. 25:2-21 ("'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."). Because DuBois fails to alleges that he is a creditor, his NJ UFTA claim fails and is dismissed.

### 8. Negligent Supervision

DuBois asserts a claim for negligent supervision as to the FHFA in Count Twenty-Four. A claim for negligent supervision requires an employer/employee relationship. To that end, a party must establish that "(1) the employer must have known or had reason to know that the employee exhibited dangerous characteristics; (2) there must be a reasonable foreseeability of harm to others; and (3) the negligent supervision must be the proximate cause of the alleged injury." *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 769 (D.N.J. 2016), *on reconsideration in part*, No. 12-4165, 2016 WL 3638108 (D.N.J. July 7, 2016) (quoting *Cordial v. Atlantic City*, No. 11-1457, 2014 WL 1095584, at *11 (D.N.J. Mar. 19, 2014)). In this instance, DuBois provides no authority by which the Court could conclude that the relationship between the FHFA as conservator over Fannie Mae qualifies as an employer/employee relationship. Therefore, DuBois fails to establish that a claim for negligent supervision would apply as a matter of law. Even if the Court were to conclude that the relationship here was akin to an employer/employee relationship, DuBois fails to sufficiently allege that the FHFA knew or had reason to know that Fannie Mae "exhibited dangerous characteristics." *Panarello*, 160 F. Supp. 3d at 769. Therefore, this claim is dismissed.

### 9. Tortious Interference Claims

In Count Twenty-Five, DuBois asserts a claim for tortious interference with prospective economic advantage against Fannie Mae, the FHFA, and MTGLQ. In Count Twenty-Six, DuBois asserts a claim for tortious interference with contract against MTGLQ and Shellpoint. To prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must plead "'[1] that [he] had a reasonable expectation of an economic advantage, [2] which was lost as a direct result of [defendants'] malicious interference, and [3] that [he] suffered losses thereby.'"

*Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 198-99 (App. Div. 1995)). To state a claim for tortious inference with a contract under New Jersey law, a party must demonstrate (1) actual interference with a contract; "(2) that the interference was inflicted intentionally by a [an entity] who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *214 Corp. v. Casino Reinvestment Dev. Auth.*, 280 N.J. Super. 624, 628 (Law Div. 1994) (citing *Norwood Easthill Assoc. v. N.E. Watch*, 222 N.J. Super. 378 (App. Div. 1988)).

As discussed, to the extent that these claims are premised on allegations regarding the 2004 settlement, they are barred by *res judicata* and collateral estoppel. It appears that, like DuBois' NJCFA claim, these counts are otherwise premised on Defendants' purported steps to preclude DuBois from participating in the Principal Reduction Program. ATPC ¶ 90-91. But also like the NJCFA claim, the idea that Fannie Mae and MTGLQ participated in a massive sale of non-performing loans to foreclose DuBois's ability to participate in the Principal Reduction Program is not plausible. Finally, because MTGLQ, and Shellpoint as its agent, are parties to the apparent contract at issue here, *i.e.* the Mortgage, a claim for tortious interference with a contract (Count Twenty-Six) is not appropriate as to these parties. *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 752-53 (1989) ("[T]he rule of tortious interference was not meant to upset the rules governing the contractual relationship itself. Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law."). Consequently, DuBois fails to state a claim for tortious interference with a prospective economic advantage or contract, and these claims are dismissed.

## 10. Deceit

Count Twenty-Nine asserts a claim for deceit. In New Jersey, a claim for deceit is the same as a claim for fraud. "To establish a claim for fraud or deceit, a plaintiff must prove 'a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment.'" *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 485 (D.N.J. 1997) (quoting *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 51 (1984)); *see also Holmin v. TRW, Inc.*, 330 N.J. Super. 30, 35 (App. Div. 2000) ("Here, the asserted cause of action is fraud, which is sometimes called 'deceit.'"). Here, DuBois' claim is based on an omission – that the Counterclaim/Third-Party Defendants failed to tell him about the Principal Reduction Program. APTC ¶¶ 117-18. As a result, DuBois must also establish that the Defendants had a duty to disclose information about the Principal Reduction Program. *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 547 (D.N.J. Apr. 24, 2013) (stating that for a fraud claim, "a fraudulent omission under the common law requires a duty to disclose"). DuBois alleges that Defendants "had a duty of good faith and fair dealing to notify DuBois of the Principal Reduction Program." APTC ¶ 117. In most cases, a bank owes no duty to its customers. The duty to disclose may, however, arise in the presence of "egregious breaches of the lender's duty of good faith and fair dealing." *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 557 (App. Div. 1997). Here, DuBois's conclusory statement that the Defendants' failure to inform him of the Principal Reduction Program constituted a breach of the duty of good faith and fair dealing is not sufficient to survive a motion to dismiss. As a result, Count Thirty is dismissed.

### 11. *Prima Facie* Tort

DuBois brings a prima facie tort claim in Count Thirty of the ATPC. A prima facie tort cause of action has not been officially recognized as a claim in New Jersey. *Richard A. Pulaski Constr. Co., Inc. v. Air Frame Hangers, Inc.*, 195 N.J. 457, 470 (2008) ("Because a *prima facie* tort cause of action, however defined, may lie only if no other tort is available, we need not address whether New Jersey recognizes that tort or otherwise defines its contours."). Even assuming that a cause of action exists, this tort is designed to encompass "'intentional, willful and malicious harms' that fall *within the gaps of the law*." *Id.* (quoting *Taylor v. Metzger*, 152 N.J. 490, 523 (1998)) (emphasis in original). Further, "prima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its own legs." *Id.* (quoting *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (N.Y. 1985)). As discuss, DuBois brought a number of tort claims challenging Counterclaim/Third-Party Defendants' allegedly wrongful conduct with regard to the settlement and failure to include him in the Principal Reduction Program. In fact, DuBois specifically states that the prima face tort claim is pled "alternatively." Given the fact that DuBois relies on the same facts for numerous other counts and because it is not clear that *prima facie* tort is a viable cause of action, Count Thirty is dismissed.

### 12. Conspiracy and Aiding & Abetting Fraud Claims

In County Twenty-Seven, DuBois asserts a claim for civil conspiracy, and in Count Twenty-Eight, he brings a claim for aiding and abetting fraud. In New Jersey, four elements comprise civil conspiracy: "'(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.'" *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 390 (D.N.J. 2016) (quoting *Morganroth & Morganroth v.*

*Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir. 2003)); *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (N.J. 2005). Moreover, the underlying unlawful conduct must give rise to an independent right of action. *Banco Popular N. Am.*, 184 N.J. at 178. Similarly, to state a claim for aiding and abetting common law fraud, a plaintiff must show that the defendants willfully and knowingly associated with another's unlawful act. *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998). As a result, "[a] claim for aiding and abetting fraud also requires proof of the underlying tort." *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commnc's Int'l, Inc.*, 387 N.J. Super. 469, 484 (App. Div. 2006). Finally, because DuBois' conspiracy and aiding and abetting counts are premised on Defendants' purported fraud, they are subject to the Rule 9 heightened pleading standard. *Lum*, 361 F.3d at 228. Because the TPC and ATPC are otherwise dismissed in their entirety, DuBois' conspiracy, and aiding and abetting fraud claims must fail due to the lack of a cognizable underlying tort. Counts Twenty-Seven and Twenty-Eight are therefore dismissed.

### 13. Declaratory Relief Claim

DuBois asserts a claim for declaratory relief pursuant to N.J.S.A. 2A:16-53 *et seq.* and 28 U.S.C. § 2201 in Count Twenty-Three, seeking to challenge the "status of the alleged Note and Mortgage," the amount and validity of amount owed, and Fannie Mae's "failure to have complied with the modified Federal Settlement Order." ATPC ¶ 75. A court will only issue a declaratory judgment if there is "a substantial controversy between the parties having legal interests of sufficient immediacy and reality." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987). At the outset, Fannie Mae's purported failure to comply with the Settlement is barred by *res judicata. See supra* Part III.2.a. And because every other claim in the ATPC is dismissed for failure to state a claim, the court also dismisses the declaratory judgment count at this time.

See, e.g., *Bank of Am., N.A. v. Westheimer*, No. 12-7080, 2014 WL 809207, at *9 (D.N.J. Feb. 28, 2014) (dismissing declaratory judgment claim because of court's finding that the counterclaims failed to state any claim as to the plaintiff); *Aetna Health, Inc. v. Srinivasan*, No. A-2035-14T2, 2016 WL 3525298, at *3 (N.J. App. Div. June 29, 2016) ("The decision to award declaratory relief is within the judge's discretion" (quoting *Util. Blade & Razor Co. v. Donovan*, 33 N.J. Super. 566, 570-71 (App. Div. 1955))). Accordingly, Count Twenty-Three is dismissed.

## IV. CONCLUSION

For the reasons stated above, Counterclaim Defendants' Fannie Mae and the FHFA's motion for leave to file a brief in excess of the page limits (D.E. 86) is **GRANTED**. In addition, Counterclaim and Third-Party Defendants' motions to dismiss the counter/third-party claims (D.E. 85, 87) are **GRANTED**. To the extent that specific counts are not dismissed with prejudice, Counterclaim/Third-Party Plaintiff has thirty (30) days to file a second amended complaint, addressing the deficiencies noted herein. If Counterclaim/Third-Party Plaintiff fails to file a second amended complaint within thirty (30) days, the dismissals without prejudice will be with prejudice. Finally, Counterclaim/Third-Party Plaintiff's cross-motion (D.E. 90) is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: October 30, 2018

John Michael Vazquez, U.S.D.J.